GRALEWSKI, Appellee and Cross–Appellant,

v.

OHIO BUREAU OF WORKERS' COMPENSATION, Appellant and Cross–Appellee.

[Cite as *Gralewski v. Bur. of Workers' Comp.,* 167 Ohio App.3d 468, 2006-Ohio-1529.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–604.

Decided March 30, 2006.

470

Michael R. Moran Co., L.P.A., and Michael R. Moran, for appellee and cross-appellant.

Jim Petro, Attorney General, and Charissa D. Payer and Kelley R. Haddox, Assistant Attorneys General, for appellant and cross-appellee.

SADLER, Judge.

{¶ 1} Appellant and cross-appellee, Ohio Bureau of Workers' Compensation, appeals from the May 12, 2005 judgment of the Franklin County Court of Common Pleas, in which that court reversed the bureau's order denying the application of appellee and cross-appellant, Dr. Lawrence A. Gralewski, for recertification as a provider in the bureau's Health Care Partnership Program ("HPP"). Dr. Gralewski has filed a cross-appeal.

{¶ 2} The record reveals the following undisputed facts. Dr. Gralewski is licensed to practice chiropractic medicine in Ohio, Michigan, and Florida. In 1992, he was charged in a Michigan state court with 13 felony counts of various offenses, including false pretenses, conspiracy, and health-care fraud. Eventually, he pleaded no contest to one felony count of false pretenses involving more than $100, was found guilty, and was sentenced to eight months in prison. In 1993, he pleaded guilty in a Michigan federal court to one felony count of mail fraud. That conviction related to Dr. Gralewski's participation in an unlawful referral scheme with other chiropractors, which involved fraudulent billing of Blue Cross/Blue Shield.

{¶ 3} Dr. Gralewski served one year in a federal community correctional center while his eight-month state-court sentence ran concurrently to his federal sentence. Following the expiration of his prison sentence, he successfully completed two years of supervised release. He also paid restitution to Blue Cross/Blue

Shield in the amount of $200,000. As a result of his convictions, the Michigan Chiropractic Board suspended his Michigan license for one year, and the Ohio Board suspended his Ohio license for five years, with four years and nine months stayed on conditions. He completed his probation with the Ohio Board in 1999.

{¶ 4} The bureau's HPP is a managed-care system through which the bureau sets and enforces standards for the provision of medical, surgical, nursing, drug, hospital, and rehabilitation services and supplies to employees suffering from compensable work-related injuries and occupational diseases. R.C. 4121.441. By legislative mandate, the bureau must adopt rules setting forth standards and criteria for use in certifying or recertifying, and for use in penalizing or decertifying, a health-care provider or a vendor for participation in the HPP. See R.C. 4121.441(A)(11) and (12).

{¶ 5} Pursuant to this legislative command, the bureau promulgated Ohio Adm.Code 4123–6–022, which became effective on February 6, 1996. This rule provides:

(A) * * * Providers must meet all licensing, certification, or accreditation requirements necessary to provide services in Ohio. * * *

(B) The minimum credentials for a provider, where applicable based upon the type of provider, are as follows. The provider shall:
* * *

(5) Not have a history of a felony conviction in any jurisdiction, a conviction under a federal controlled substance act, a conviction for an act involving dishonesty, fraud, or misrepresentation, a conviction for a misdemeanor committed in the course of practice, or court supervised intervention or treatment in lieu of conviction pursuant to section 2951.041 of the Revised Code.

{¶ 6} On January 31, 1996, Dr. Gralewski applied for certification in the HPP. He disclosed his felony convictions in his application but was nonetheless certified as a provider. In January 2000, Dr. Gralewski applied for recertification and again disclosed his felony convictions. The bureau renewed his certification. In December 2002, he again applied for recertification, and once again disclosed his felony convictions. This time, however, on January 17, 2002, the bureau notified Dr. Gralewski that it intended to revoke his certification due to his felony convictions. He requested a hearing, pursuant to R.C. Chapter 119. On May 8, 2003, the bureau held a hearing, at which both the bureau and Dr. Gralewski submitted testimony and other evidence.

{¶ 7} Dr. Gralewski's evidence included the testimony of two fellow chiropractors, a physical-therapy assistant, a pharmacist, and one of the FBI special agents (now retired) who had investigated his conduct underlying his federal conviction. The former FBI agent testified that Dr. Gralewski was cooperative

throughout her investigation and promptly made restitution to Blue Cross/Blue Shield. The remaining witnesses testified to Dr. Gralewski's good moral character, excellent reputation, and skill in the practice of chiropractic medicine. Dr. Gralewski himself testified that he had made full restitution to Blue Cross/Blue Shield, that he had never been sued for malpractice, and that Blue Cross/Blue Shield had reinstated him as one of its authorized providers.

{¶ 8} On September 3, 2003, the referee issued a report and recommendation, including findings of fact and conclusions of law. Therein, she recommended that Dr. Gralewski be recertified. She explained:

> In the case at hand, OAC 4123–6–022(B)(5) is specific in that it states that a provider "shall not have a history of a felony conviction* * * [or] a conviction for an act involving dishonesty, fraud, or misrepresentation* * *." Because the administrative agency took a contrary view to the law and its rules, it is not precluded from rectifying its mistake. The referee agrees that BWC had knowledge, or should have known, of the conviction at the time it initially certified Dr. Gralewski in 1996; however, the certification was in direct contradiction to the express rule. Therefore, BWC has the authority to rectify its oversight and deny Dr. Gralewski recertification in the HPP program.
>
> However, the inquiry does not stop there. Chapter 119 hearings are provided so that a doctor may present any mitigating evidence or testimony. I do find that Dr. Gralewski has shown that he has redeemed himself and has provided satisfactory care to injured workers in Ohio.

{¶ 9} The bureau filed objections to the referee's report and recommendation. Upon consideration of the objections, the bureau's administrator, James Conrad ("the administrator"), rejected the referee's recommendation. Specifically, he stated:

> Finally, I find that I cannot agree with or adopt the finding and recommendation of the referee that Dr. Gralewski has presented mitigating circumstances sufficient to allow him to remain a BWC certified provider. While Dr. Gralewski may indeed have "cooperated with the FBI and [taken] accountability for his actions," "made full restitution," and "showed remorse not only in his testimony at hearing, but by his actions" as the referee stated, the fact remains that that [sic] Dr. Gralewski pled guilty to one count of mail fraud in the U.S. District Court, Eastern District of Michigan and pled guilty to False Pretenses over $100 in a Michigan State Court. Dr. Gralewski cannot demonstrate, nor did he attempt to, that his actions were not wrong, that the charges to which he pled guilty were unjustified, or that he acted as a reasonably prudent person would have under the circumstances. Therefore, I do not find that Dr. Gralewski has presented mitigating circumstances sufficient to allow him to remain a BWC certified provider.

Because I have concluded that Dr. Gralewski has failed to comply with the workers' compensation statutes and rules governing providers in that Dr. Gralewski has convictions for mail fraud and false pretenses contrary to Ohio Administrative Code Rule 4123–6–022(B)(5), and because I have further concluded that Dr. Gralewski has presented no mitigating circumstances, I hereby reject the recommendation of the referee and order that the application of Dr. Gralewski for recertification to participate in the HPP be DENIED.

{¶ 10} Dr. Gralewski appealed the bureau's order to the Franklin County Court of Common Pleas and requested a stay of the order pending the outcome of the appeal. He argued that a stay was appropriate for a number of reasons, the chief reason being that the overwhelming amount of mitigating evidence supported a strong likelihood that his appeal would succeed on its merits. The bureau urged the court to deny the request, arguing that regardless of the mitigating evidence Dr. Gralewski might present, the administrative code simply does not allow convicted felons to participate in the HPP. Interestingly, the trial court rejected Dr. Gralewski's argument and found the bureau's argument to be well taken. Citing Ohio Adm.Code 4123–6–022(B)(5), the court found, "Appellant has not [met] the minimum requirements for HPP certification." It was on that basis that the court denied the motion for a stay of the bureau's order.

{¶ 11} After full briefing, however, the court ultimately reversed the bureau's order. The court agreed with Dr. Gralewski's argument that in determining that the doctor had not presented "mitigating circumstances sufficient to allow him to remain a BWC certified provider," the bureau's administrator had engaged in unlawful rulemaking by adjudication and had thereby placed an unlawful burden of proof upon Dr. Gralewski.

{¶ 12} The court determined that because neither the Ohio Revised Code nor the applicable portions of the Ohio Administrative Code set forth any standard for "mitigating circumstances" sufficient to allow a convicted felon to keep HPP certification, it was unlawful for the bureau to have imposed upon Dr. Gralewski the burden to demonstrate, in the administrator's words, "that his actions were not wrong, that the charges to which he pled guilty were unjustified, or that he acted as a reasonably prudent person would have under the circumstances." Based upon this unlawful rulemaking, the court found that the bureau acted arbitrarily and capriciously, and reversed the order.

{¶ 13} The trial court rejected Dr. Gralewski's other arguments, namely: (1) the bureau's action was barred by the doctrine of equitable estoppel, (2) the bureau denied him the right to equal protection, (3) the bureau violated the Full Faith and Credit Clauses of the state and federal constitutions, (4) it was improper for the administrator to consider the bureau's objections to the referee's report and recommendation, (5) the order is invalid because the January 17,

2002 notice was signed by the bureau's chief medical management officer instead of the administrator himself, (6) the notice was defective because it did not contain a summary of the evidence or a citation of the rules allegedly violated, and (7) Ohio Adm.Code 4123–6–022(B)(5) is inapplicable to him because it was not in effect at the time of his original application to become an HPP provider. The court also struck from both parties' briefs copies of orders concerning the recertification applications of other chiropractors. The court pointed out that none of the documents was contained in the certified record from the bureau and that neither party had requested to supplement the record pursuant to R.C. 119.12.

{¶ 14} On appeal, the bureau presents two assignments of error for our review, as follows:

I. Under Ohio Adm.Code 4123–6–02.2(b)(5), "mitigating evidence" cannot overcome the existence of a felony conviction that precludes a medical provider's participation in the BWC's HPP.

II. Ohio Adm.Code 4123–6–02.2(b)(5) does not impose an undue burden of proof on the applicant to demonstrate eligibility to participate in the BWC's HPP.

{¶ 15} In his cross-appeal, Dr. Gralewski presents the following four assignments of error for our review:

I. The Common Pleas Court erred when it ordered stricken all references to unreported agency decisions in both Dr. Gralewski's and the BWC's merit briefs.

II. The Court erred by holding that the BWC was enforcing a public right or protecting a public interest in decertifying Dr. Gralewski, rejecting his defenses of laches or estoppel that were asserted based on the seven-year delay in the BWC's action to decertify him.

III. The Court erred when it held that the BWC did not violate Dr. Gralewski's equal protection rights in decertifying him from the Health Partnership Program on the sole basis that he was a felon, when evidence showed he was completely rehabilitated and where other felons are permitted to participate.

IV. The Court erred when it held that it was permissible for the BWC to file objections to its own Referee's Report and Recommendation and for the Administrator to consider such objections in issuing his Order.

{¶ 16} R.C. 119.12 governs this appeal. The standard of review for the court of common pleas is to determine whether the bureau's order is supported by reliable, probative, and substantial evidence, and is in accordance with the law. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. The

court of common pleas' "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence and the weight thereof.'" *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390. "[W]hen determining whether or not an administrative agency's order is properly supported, a trial court is required to give due deference to the decision of the agency since the General Assembly has determined that body to be in the best position to review and weigh the evidence presented." *Krain v. State Med. Bd.* (Oct. 29, 1998), 10th Dist. No. 97APE08–981, 1998 WL 767304.

{¶ 17} A court of appeals does not determine the weight of the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240. The court of appeals' review is limited to determining whether the court of common pleas abused its discretion. *Scheidler v. Ohio Bur. of Workers' Comp.,* 10th Dist. No. 04AP–584, 2005-Ohio-105, 2005 WL 74124, ¶ 10. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. On the question of whether the agency's order was in accordance with the law, this court's review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835. Issues relating to constitutionality and procedural due process arising from the agency's action fall under a less deferential standard of review than the abuse-of-discretion standard. *Slorp v. Dept. of Adm. Serv.* (Apr. 30, 1998), 10th Dist. No. 97APE08–1136, 1998 WL 212759.

{¶ 18} We begin by addressing the bureau's assignments of error, which are interrelated and will be discussed together. Both of these assignments of error charge that the trial court abused its discretion in finding that the bureau's order was arbitrary and capricious and not in accordance with law. The question presented is whether the trial court erred in determining that the bureau's order unlawfully placed upon Dr. Gralewski the burden of proving the existence of specific types of mitigating circumstances that overweigh his felony convictions.

{¶ 19} We begin by viewing the bureau's order in the simplest terms; that is, at its essence, the order decertified Dr. Gralewski from participating in the HPP. Therefore, the question that was presented to the court of common pleas was whether the decertification order was supported by reliable, probative, and substantial evidence and whether the order was in accordance with law. As noted earlier, the question for this court is whether the court of common pleas

abused its discretion when it found that the bureau's order was not in accordance with law and when it reversed the order on that basis.

{¶ 20} It is our determination that the bureau's order was lawful. The language of Ohio Adm.Code 4123–6–022(B)(5) is clear and unambiguous. That section prescribes that, as part of the "minimum credentials for a provider," the provider "*shall* * * * *[n]ot* have a history of a felony conviction in any jurisdiction * * * [or] a conviction for an act involving dishonesty, fraud, or misrepresentation." (Emphasis added.) Furthermore, pursuant to Ohio Adm.Code 4123–6–025(B), "[t]he administrator of workers' compensation * * * may refuse to certify or recertify or may decertify a provider from participation in the HPP where the provider has failed to comply with the workers' compensation statutes or rules governing providers."

{¶ 21} Read together, these two rules authorize the administrator to decertify any provider who has been convicted of a felony or who has a conviction for an act involving dishonesty, fraud, or misrepresentation. It is undisputed that Dr. Gralewski has been convicted of a felony and has a conviction for an act involving dishonesty, fraud, and misrepresentation. Thus, he does not meet the minimum credentialing requirements for an HPP provider, and, therefore, as a matter of law, the administrator was authorized to decertify him. See *Windon v. State Bd. of Edn.* (Oct. 14, 1996), 4th Dist. No. 95CA17, 1996 WL 599420. See, also, *Journey v. Ohio Motor Vehicle Salvage Dealers Licensing Bd.* (Jan. 23, 2002), 4th Dist. No. 01CA2780, 2002 WL 205854.

{¶ 22} Neither the applicable statute nor the foregoing rules contain any mention of mitigating circumstances. Thus, evidence of mitigation is irrelevant to the basic issue of whether the administrator had the legal authority to decertify Dr. Gralewski. See *Roy v. Ohio State Med. Bd.* (1992), 80 Ohio App.3d 675, 680–681, 610 N.E.2d 562.

{¶ 23} In his order, the administrator erroneously alluded to the existence of a standard of proof respecting mitigating circumstances in cases involving decertification of providers for failure to meet minimum credentialing requirements. The trial court found that this reference to mitigating circumstances constituted unlawful agency rulemaking by adjudication and that it rendered the bureau's order arbitrary and capricious. We disagree on both points.

{¶ 24} First, the administrator's reference to mitigating circumstances does not constitute rulemaking by adjudication. R.C. 119.12 establishes the procedure for the adoption, amendment, or rescission of rules. The procedure is intended to permit "a full and fair analysis of the impact and validity of a proposed rule," *Condee v. Lindley* (1984), 12 Ohio St.3d 90, 93, 12 OBR 79, 465 N.E.2d 450, by " 'provid[ing] an opportunity for opponents of a proposed regula-

tion to express their views as to the wisdom of the proposal and to present evidence with respect to its illegality.'" *Northeast Ohio Regional Sewer Dist. v. Shank* (1991), 58 Ohio St.3d 16, 24, 567 N.E.2d 993, quoting *Ohio Grape Growers, Vintners & Bottlers Assn. v. Bd. of Liquor Control* (1961), 115 Ohio App. 243, 245, 20 O.O.2d 320, 184 N.E.2d 767.

{¶ 25} An agency must comply with certain procedures in order to adopt rules. R.C. 119.03. Any rule promulgated in a manner not in compliance with those procedures will be deemed invalid. R.C. 119.02. A rule is defined as "any rule, regulation, or standard, *having a general and uniform operation,* adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency." (Emphasis added.) R.C. 119.01.

{¶ 26} A key issue to be considered in determining whether an agency has made a rule is whether the alleged rule was intended to have uniform and general application. *McLean Trucking Co. v. Lindley* (1982), 70 Ohio St.2d 106, 115, 24 O.O.3d 187, 435 N.E.2d 414; *Ohio Nurses Assn. v. State Bd. of Nursing Edn. & Nurse Registration* (1989), 44 Ohio St.3d 73, 75, 540 N.E.2d 1354; *Livisay v. Ohio Bd. of Dietetics* (1991), 73 Ohio App.3d 288, 291, 596 N.E.2d 1129. In our view, the administrator's comments regarding mitigating circumstances are not intended to have uniform and general application to the HPP credentialing process or to establish a new rule respecting decertification of convicted felons. At best, his comments were a rather elaborate, if unnecessary, explication of his rejection of the referee's unsanctioned inquiry into aspects of the case beyond the undeniable fact of Dr. Gralewski's convictions.

{¶ 27} "[Another] pivotal issue in determining the effect of a document [or a portion thereof] is whether it enlarges the scope of the rule or statute from which it derives rather than simply interprets it." *State ex rel. Saunders v. Indus. Comm.,* 101 Ohio St.3d 125, 2004-Ohio-339, 802 N.E.2d 650, ¶ 27, citing *Ohio Nurses Assn.,* supra, at 76, 540 N.E.2d 1354. In the instant case, the administrator's comments regarding mitigating circumstances do not expand the minimum credentials for a provider found in Ohio Adm.Code 4123–6–022(B)(5), nor do they enlarge the scope of the administrator's authority to decertify a provider for failure to meet such minimum standards, pursuant to Ohio Adm.Code 4123–6–025(B).

{¶ 28} Accordingly, we conclude that the trial court erred in determining that the bureau engaged in unlawful rulemaking by adjudication and that its order was thus arbitrary, capricious, and contrary to law. The order was lawful and properly supported. Therefore, we find both of the bureau's assignments of error to be well taken and sustain them.

{¶ 29} We now turn to Dr. Gralewski's cross-appeal. In his first assignment of error, he argues that the trial court erred when it struck from the record copies of bureau decisions in cases involving providers other than Dr. Gralewski, which both parties had attached to their briefs.

{¶ 30} He argues that by attaching copies of those decisions and making reference to them, neither party was attempting to supplement the record with additional evidence; rather, each party was attempting to persuade the court that its own position found support in reasoning previously utilized by the bureau. Dr. Gralewski points out that S.Ct.R.Rep.Op. 7(A) requires that opinions be cited according to the Manual of Citations adopted by the Reporter of Decisions for the Supreme Court of Ohio, and that the Interim Edition of that manual, dated July 1, 1992, includes administrative agency opinions within the list of unreported cases with respect to which it instructs as to proper citation form. Thus, he argues, it is permissible for parties to use agency decisions as persuasive authority.

{¶ 31} A review of the briefs filed in the court of common pleas reveals that the parties cited bureau orders issued in other providers' cases to argue the merits of Dr. Gralewski's claim that the bureau had violated his rights under the Equal Protection Clauses of the Ohio Constitution and the United States Constitution. In other words, the parties cited these orders to demonstrate how the bureau had dealt with other, similarly situated providers.

{¶ 32} The parties used these other orders not, as Dr. Gralewski argues, merely as persuasive authority supporting a legal position; rather, the parties attempted to use the orders as substantive evidence as to how the bureau had treated those allegedly in a situation substantially similar to Dr. Gralewski's. Accordingly, we find no abuse of discretion in the trial court's order striking all references to these other cases absent a request to supplement the record. Dr. Gralewski's first assignment of error is, therefore, overruled.

{¶ 33} In his second assignment of error, Dr. Gralewski argues that the trial court erred when it ruled that the bureau did not deprive him of constitutionally guaranteed due process when it took no action to decertify him until six years after he first made the bureau aware of his felony convictions. He argues that laches should bar the bureau's action or, alternatively, that the bureau should be estopped from decertifying him due to its unreasonable delay in taking action.

{¶ 34} The equitable doctrine of laches involves " 'an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.' " *State ex rel. Eaton Corp. v. Indus. Comm.* (1997), 80 Ohio St.3d 352, 356, 686 N.E.2d 507, quoting *Connin v.*

*Bailey* (1984), 15 Ohio St.3d 34, 35, 15 OBR 134, 472 N.E.2d 328. The prejudice shown must be *material* prejudice. *Connin,* 15 Ohio St.3d at 35–36, 15 OBR 134, 472 N.E.2d 328.

{¶ 35} The trial court rejected Dr. Gralewski's laches argument on the authority of *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630. In that case, the Supreme Court of Ohio held as follows, at paragraphs two and three of the syllabus:

2. The government cannot be estopped from its duty to protect public welfare because public officials failed to act as expeditiously as possible.

3. Laches is generally no defense to a suit by the government to enforce a public right or to protect a public interest.

{¶ 36} It is true that the due-process analysis is applicable to administrative hearings. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 52, 554 N.E.2d 97. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18, quoting *Armstrong v. Manzo* (1965), 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62. It is also true, however, that as a general rule, in the absence of a statute to the contrary, when the government brings a suit or takes some quasi-judicial action to enforce a public right or protect the public interest, laches is not a defense. *Frantz,* supra; *McCutcheon v. Ohio State Med. Bd.* (1989), 65 Ohio App.3d 49, 56, 582 N.E.2d 1030; *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 307, 31 OBR 584, 511 N.E.2d 112; *Besl Corp. v. Pub. Util. Comm.* (1976), 45 Ohio St.2d 146, 150, 74 O.O.2d 262, 341 N.E.2d 835.

{¶ 37} To the extent that Dr. Gralewski is arguing that his due process rights were violated by an unreasonable delay in initiating the decertification process, he must show more than mere delay. "Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus. Prejudice will not be inferred from the mere lapse of time. *Sutton v. Ohio State Bd. of Pharmacy* (Apr. 30, 2002), 11th Dist. No. 2001–T–0030, 2002 WL 819059. Moreover, "the existence of laches is a question primarily addressed to the discretion of the trial court." *Gardner v. Panama RR. Co.* (1951), 342 U.S. 29, 30, 72 S.Ct. 12, 96 L.Ed. 31.

{¶ 38} Here, Dr. Gralewski argues that he has been materially prejudiced because, due to the passage of time, he had forgotten many of the details of the

transactions underlying his convictions by the time the bureau sought to take action against his provider certification. But the convictions themselves rendered Dr. Gralewski legally ineligible to be certified as a provider in the HPP; thus, details of the facts surrounding the convictions were of no import to Dr. Gralewski's defense.

{¶ 39} Additionally, despite his claim of prejudice, Dr. Gralewski was indeed able to testify about the transactions underlying his convictions, including the precise time when he ceased engaging in the unlawful behavior. See *Smith v. State Med. Bd. of Ohio* (July 19, 2001), 10th Dist. No. 00AP–1301, 2001 WL 811839 (trial court did not abuse its discretion in rejecting doctor's laches/equitable-estoppel defense based upon staleness of charges, because the doctor indeed possessed sufficient memory of the events in order to testify about them at the hearing).

{¶ 40} Moreover, the primary focus of Dr. Gralewski's testimony was not his preconviction activity, but his actions taken *after* his convictions, because his defense consisted of the notion that his postconviction actions served to mitigate the import of his convictions upon his qualifications for HPP certification. Accordingly, we find that appellant failed to demonstrate that he has been materially prejudiced by the bureau's delay.

{¶ 41} We also find that the trial court correctly determined that pursuant to *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630, laches is not available here, because the bureau's belated decertification of Dr. Gralewski was an action to enforce a public right or protect a public interest. Pursuant to R.C. 4121.441, the bureau must administer the HPP. Pursuant to R.C. 4121.441(A)(12), the bureau must adopt rules for the decertification of HPP providers. In accordance with this mandate, the bureau has promulgated Ohio Adm.Code 4123–6–022, which excludes from eligibility as an HPP provider all those with "a history of a felony conviction in any jurisdiction, a conviction under a federal controlled substance act, [or] a conviction for an act involving dishonesty, fraud, or misrepresentation." Ohio Adm.Code 4123–6–022(A)(5).

{¶ 42} Moreover, the applicable statutes and regulations impose no time limitation for instituting the decertification process based upon a provider's felony convictions, and, as we noted hereinabove, Dr. Gralewski has not demonstrated that he suffered any prejudice from the bureau's delay. See *Strohm v. Reynoldsburg City School Dist. Bd. of Edn.* (Mar. 31, 1998), 10th Dist. No. 97APE07–972, 1998 WL 151082 (laches was inapplicable to the school board's termination of teacher's contracts based on improper sexual activities with various students over a 19–year period because the board's action sought to further the public interest in the prevention of sexual misconduct against minor students, and the teacher had not demonstrated material prejudice from the alleged delay). See, also,

*Westward Auto, Inc. v. Ohio Motor Vehicle Salvage Dealers Licensing Bd.* (Jan. 18, 2000), 7th Dist. No. 98–CO–69, 2000 WL 126672 (equitable estoppel was inapplicable to challenge the board's denial of the salvage dealer's license after the board had repeatedly renewed the license, despite the fact that the dealer had disclosed with each application that his business was not primarily operated for the purpose of selling salvage motor vehicle parts, which was a prerequisite to licensure).

{¶ 43} Far from being prejudiced by the bureau's tardiness, it appears to this court that Dr. Gralewski benefited from it in that, for six years, despite the fact that he lacked the minimum credentials to participate in the HPP, he was able to include within his practice workers' compensation claimants whose treatment costs would be covered by the state workers' compensation fund.

{¶ 44} In the present case, the bureau's decertification of Dr. Gralewski constitutes enforcement of the law and protection of the public interest in ensuring that monies from the state workers' compensation insurance fund do not flow to convicted felons and those convicted for acts of fraud and dishonesty. Thus, the syllabus of *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 555 N.E.2d 630, precludes the application of equitable estoppel and laches in this case.

{¶ 45} Finally, Dr. Gralewski argues that this case should be excepted from the rule articulated in *Frantz* because the bureau's delay in decertifying him was accompanied by a series of promises (in the form of the bureau entering into successive provider agreements with Dr. Gralewski) upon which he relied to his detriment.

{¶ 46} For support of this proposition, Dr. Gralewski cites the case of *Pilot Oil Corp. v. Ohio Dept. of Transp.* (1995), 102 Ohio App.3d 278, 283, 656 N.E.2d 1379. In that case, this court articulated an exception to the general rule set forth in *Frantz*. Specifically, we held that estoppel may be imposed when a municipality makes a representation in the context of a contractual relationship with another party, so long as the representation was within the municipality's power to make, the subject matter of the contract was not illegal or ultra vires, and the representation induced reliance. See, also, *Shapely, Inc. v. Norwood Earnings Tax Bd. of Appeals* (1984), 20 Ohio App.3d 164, 20 OBR 198, 485 N.E.2d 273.

{¶ 47} This exception is grounded in the doctrine of promissory estoppel, which holds that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement of the Law 2d, Contracts (1981), Section 90. See, also, *Ed Schory & Sons, Inc. v. Francis* (1996), 75 Ohio St.3d 433, 439, 662 N.E.2d 1074.

{¶ 48} The exception identified in *Pilot Oil* finds justification in the notion that in matters of government contracts, assuming the subject matter of the contract is within the authority of the governmental agency, the business community should be assured that the government is bound in its contractual obligations just as a private citizen would be bound. See *State v. First, Inc.* (Apr. 3, 1990), 2d Dist. No. 11486, 1990 WL 40668.

{¶ 49} To be successful on a claim of promissory estoppel, "the party claiming the estoppel must have relied on the conduct of the adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Frantz,* supra, at 145, 555 N.E.2d 630. The exception articulated in *Pilot Oil* has no application in the present case because the bureau was never legally authorized to certify Dr. Gralewski as an HPP provider, due to his felony convictions. Thus, it was unreasonable for Dr. Gralewski to rely upon the bureau's certification and recertification, which could not reasonably have misled him into believing that he met the minimum requirements to be HPP certified.

{¶ 50} The *Pilot Oil* court itself cautioned that the exception articulated therein "will not apply when a position taken by an administrative agency is contrary to express statutory law." *Pilot Oil,* supra, at 283, 656 N.E.2d 1379, citing *Griffith v. J.C. Penney Co.* (1986), 24 Ohio St.3d 112, 24 OBR 304, 493 N.E.2d 959. See, also, *Drake v. Med. College of Ohio* (1997), 120 Ohio App.3d 493, 495, 698 N.E.2d 463; *Marbury v. Cent. State Univ.* (Dec. 14, 2000), 10th Dist. No. 00AP–597, 2000 WL 33282458; *Ohio Assn. of Pub. School Emps. v. School Emp. Retirement Sys. Bd.,* 10th Dist. No. 04AP–136, 2004–Ohio–7101; *Jacobson v. Med. College of Ohio,* 10th Dist. No. 04AP–931, 2005-Ohio-2558, 2005 WL 1220741. Any other result would countenance evasion of the law. *Buchanan Bridge Co. v. Campbell* (1899), 60 Ohio St. 406, 426, 54 N.E. 372; *Frantz,* supra, at 146, 555 N.E.2d 630.

{¶ 51} In the case of *Shampton v. Springboro,* 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, the Supreme Court of Ohio reaffirmed the long-held principle that " 'no recovery can be had on a contract that is entered into contrary to one or more of the legislated requirements * * * ' A thread running throughout the many cases the court has reviewed is that the contractor must ascertain whether the contract complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril.' " Id. at ¶ 27–28, quoting *Lathrop v. Toledo* (1966), 5 Ohio St.2d 165, 172–173, 34 O.O.2d 278, 214 N.E.2d 408. On this authority, the *Shampton* court held, "Persons seeking to enter into a contractual relationship with a governmental entity are on constructive notice of the statutory limitations on the power of the [entity] agent to contract." Id. at ¶ 34.

{¶ 52} Dr. Gralewski views the provider agreements to which he was a party from 1996 to 2002 as a guarantee that he will maintain his status as a provider, despite the fact that he fails to meet the minimum requirements. Moreover, he appears to believe that, regardless whether he reasonably relied upon the bureau's erroneous certification of him, the bureau is constrained to live with its own mistake and violate its own regulations ad infinitum because Dr. Gralewski may experience hardship upon decertification. We disagree.

{¶ 53} An administrative rule that is issued pursuant to statutory authority has the force of law so long as it is not unreasonable and does not conflict with a statute covering the same subject matter. *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538. When the parties hereto entered into provider agreements, they did so contrary to Ohio Adm.Code 4123-6-022(A)(5). Therefore, these agreements were made in violation of law. As such, they were void—not merely voidable—ab initio. *Buchanan Bridge,* supra, at 420, 54 N.E. 372. In such a case, "courts will not lend their aid to enforce such a contract directly or indirectly, but will leave the parties where they have placed themselves." Ibid.

{¶ 54} For all of the foregoing reasons, we find no abuse of discretion in the trial court's rejection of Dr. Gralewski's estoppel and laches defenses, and we see no reason to apply an exception in this case. Accordingly, Dr. Gralewski's second assignment of error is overruled.

{¶ 55} In his third assignment of error, Dr. Gralewski argues that the trial court erred when it rejected his equal-protection claim. In the proceedings below, he argued that the bureau denied him equal protection of law by decertifying him while allowing other providers with felony convictions to remain certified HPP providers.

{¶ 56} The trial court found that the only evidence of record with respect to this issue was the testimony of a supervisor in the bureau's credential review unit who testified that at the time of the hearing, others with felony convictions were enrolled as HPP providers. This testimony can be found in two lines of the hearing transcript. The court of common pleas found this evidence insufficient to make out a claim that the bureau's actions violated Dr. Gralewski's right to equal protection. We agree.

{¶ 57} The guarantee of equal protection of the laws means that " 'all litigants similarly situated may appeal to courts for both relief and defense under like conditions, with like protection, and without discrimination.' " *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 288, 595 N.E.2d 862, quoting *Sexton v. Barry* (C.A.6, 1956), 233 F.2d 220, 224. Thus, " 'so long as the laws are applicable to all persons under like circumstances and * * * operate alike upon all persons

similarly situated, it suffices the constitutional prohibition against the denial of equal protection of the laws.'" Id., quoting *Dayton v. Keys* (1969), 21 Ohio Misc. 105, 50 O.O.2d 29, 252 N.E.2d 655. "When a complaining party alleges that a law that is fair on its face was applied unequally to those who are similarly situated, that party must establish intentional and purposeful discrimination in order to prove a denial of equal protection." *Linden Med. Pharmacy v. Ohio State Bd. of Pharmacy*, 10th Dist. No. 02AP–1233, 2003-Ohio-6650, 2003 WL 22927252, ¶ 16, citing *Cahill v. Lewisburg* (1992), 79 Ohio App.3d 109, 116, 606 N.E.2d 1043.

{¶ 58} Based on the dearth of evidence in the record, we, too, are unable to determine whether any of the HPP providers to whom the bureau witness referred are situated in a similar manner to Dr. Gralewski, or how Ohio Adm.Code 4123–6–022 has been applied to those providers. Moreover, it is possible that other HPP providers who are convicted felons have received the same treatment as Dr. Gralewski. Because the evidence Dr. Gralewski presents is insufficient to determine whether the bureau violated his equal-protection rights, we find no abuse of discretion in the trial court's ruling, and overrule Dr. Gralewski's third assignment of error.

{¶ 59} In his fourth and final assignment of error, Dr. Gralewski argues that the trial court erred in ruling that the bureau is permitted to file objections to the referee's report and recommendation. He directs our attention to the definition of "party" found in R.C. 119.01, which is "the person whose interests are the subject of an adjudication by an agency." Under this definition, Dr. Gralewski argues, the bureau is not a "party" and, therefore, lacks standing to file objections to the referee's report and recommendation.

{¶ 60} The bureau directs our attention to Ohio Adm.Code 4123–6–17, which sets standards and procedures for HPP decertification hearings. That rule states:

The administrator may conduct the hearing personally or may delegate the hearing to a referee, who shall be an attorney at law. The referee may be from the bureau law section or an attorney employed by the administrator especially for such purpose. *The burden of proof shall be on the bureau to establish cause for taking action against the provider or MCO, and shall be by a preponderance of the evidence. The bureau shall be represented by the attorney general at the adjudication hearing.* A stenographic record of the hearing shall be made. Should the hearing be conducted by a referee, the referee shall issue a report and recommendation, a copy of which shall be mailed to all parties and representatives, and which may be objected to in writing within ten days. The administrator may approve, disapprove, or modify the report and recommendation of the referee, but shall not take such action until the after the expiration of the period for objection to the referee's

report. The administrator may order additional testimony. The administrator shall issue a decision in writing, sent by certified mail, to the provider or MCO and any representative informing the parties of the administrator's decision in the matter.

(Emphasis added.) Ohio Adm.Code 4123-6-17(G).

{¶ 61} According to the bureau, the above language clearly indicates that the bureau is a party who must be represented by counsel and who bears a specific burden of proof. Thus, the bureau argues, it is permitted, under the language of the foregoing rule, to object to the referee's report and recommendation and to thereby seek a ruling from the administrator that results in the provider not being certified to participate in the HPP.

{¶ 62} We agree with the bureau and with the trial court. The bureau was a party to the proceeding before the referee and was permitted to object to the referee's report and recommendation. Accordingly, Dr. Gralewski's fourth assignment of error is without merit and is overruled.

{¶ 63} To summarize, the bureau's first and second assignments of error are sustained, and Dr. Gralewski's first, second, third, and fourth assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court with instructions to enter a new judgment affirming the bureau's order as being supported by reliable, probative, and substantial evidence, and in accordance with law.

Judgment affirmed in part
and reversed in part,
and cause remanded with instructions.

McGRATH and TRAVIS, JJ., concur.