[Cite as *Katz v. Ohio Real Estate Comm.*, 2018-Ohio-1379.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Larry Katz, | : | |
| Appellant-Appellant, | : | |
| | : | No. 17AP-537 |
| v. | : | (C.P.C. No. 17CV-1487) |
| Ohio Real Estate Commission, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

# D E C I S I O N

### Rendered on April 12, 2018

**On brief:** *Madison & Rosan, LLP*, *Kristin E. Rosan*, and *Walter J. McNamara, IV*, for appellant. **Argued:** *Walter J. McNamara, IV.*

**On brief:** *Michael DeWine*, Attorney General, and *Rachel Huston*, for appellee. **Argued:** *Rachel Huston.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant, Larry Katz, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, the Ohio Real Estate Commission ("Commission"), revoking his real estate salesperson's license. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This appeal arises from an investigation conducted by the Ohio Department of Commerce Division of Real Estate and Professional Licensing ("the Division") regarding the conduct of Katz, who held an Ohio real estate salesperson's license. On March 25, 2015, a complaint was filed with the Division relating to Katz's conduct with respect to a property

located at 4127 Jonquil Street in Columbus, Ohio ("the Jonquil Street property").[1] On February 19, 2008, Katz, as agent for an entity identified as Best Rentals, entered into a property management agreement with the owner of the Jonquil Street property, Denise Ramos-Laboy. The property management agreement indicated that Best Rentals was an affiliate of Barnett Realty. The property management agreement provided that Ramos-Laboy employed Best Rentals exclusively to rent, lease, operate, and manage the Jonquil Street property. The initial term of the property management agreement was from February 19 until August 31, 2008, but the agreement further provided that it would automatically renew year-to-year thereafter unless either party gave written notice of termination.

{¶ 3} On April 9, 2015, the Division issued a notice to Katz regarding the complaint. The notice indicated the address of the property and the transaction date of February 19, 2008. The notice further advised Katz that the Division's investigative staff would review the complaint and requested that Katz provide a written response to the complaint and all transactional records and advertising relating to the Jonquil Street property.

{¶ 4} On June 17, 2016, the Division issued a notification of formal hearing to Katz. The notification of formal hearing indicated the Division's investigation revealed reasonable and substantial evidence of acts, in violation of R.C. Chapter 4735, and that if violations were proved, Katz could face discipline including the suspension or revocation of his real estate salesperson's license. The notification of formal hearing was accompanied by an attachment setting forth two charges, both of which related to the period between approximately April 2012 and June 2014 with respect to the Jonquil Street property: (1) Katz acted like an Ohio real estate broker without a broker's license, in violation of R.C. 4735.02 as incorporated in R.C. 4735.18(A)(6), by failing to perform property management services for the Jonquil Street property through the brokerage he was licensed with at the relevant time, and (2) Katz failed to collect deposits, payments, and/or management fees in the name of and/or with the consent of the real estate broker he was licensed with at the relevant time, in violation of R.C. 4735.21 as incorporated by R.C. 4735.18(A)(6).

---

[1] A copy of the original complaint as filed with the Division is not included in the record before this court. Therefore, our review is limited to the allegations developed through the subsequent investigation.

{¶ 5} On September 2, 2016, an administrative hearing officer ("hearing officer") conducted a formal hearing on the complaint. The Division presented testimony from Ramos-Laboy and from Kerry Hile, an investigator for the Division. Katz also appeared and testified at the formal hearing. Following the hearing, on October 24, 2016, the hearing officer issued findings of fact and conclusions of law concluding Katz did not act like a real estate broker without a license as alleged in the first charge. The hearing officer further concluded Katz failed to collect rental payments or property management fees in the name of his licensed broker, thereby violating R.C. 4735.21 as incorporated by R.C. 4735.18(A)(6), as alleged in the second charge.

{¶ 6} On November 16, 2016, the Division notified Katz the Commission would review the evidence from the formal hearing and the hearing officer's findings of fact and conclusions of law. The Commission considered the hearing officer's findings and conclusions at its January 18, 2017 meeting. The members of the Commission also considered arguments from counsel for Katz and the Division and addressed questions directly to Katz. Later in the meeting, the members of the Commission discussed the matter and ultimately voted unanimously to adopt in part and reject in part the findings of fact and conclusions of law issued by the hearing officer and to revoke Katz's real estate salesperson's license. Specifically, the Commission rejected the hearing officer's conclusion that Katz did not violate R.C. 4735.02 as incorporated in R.C. 4735.18, as alleged in the first charge. On January 25, 2017, the Commission issued an adjudication order adopting in part and rejecting in part the hearing officer's findings of fact and conclusions of law. The Commission found Katz violated R.C. 4735.18 as set forth in both of the charges and revoked Katz's real estate salesperson's license as the penalty for those violations.

{¶ 7} Katz appealed the Commission's adjudication order to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The common pleas court entered a judgment affirming the Commission's adjudication order, finding it was supported by reliable, probative, and substantial evidence.

## II. Assignments of Error

{¶ 8} Katz appeals and assigns the following three assignments of error for our review:

> [I.] THE ADJUDICATION ORDER IS INVALID AND NOT IN
> ACCORDANCE WITH THE LAW.

[II.] THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT THE ADJUDICATION ORDER WAS SUPPORTED BY RELIABLE PROBATIVE AND SUBSTANTIAL EVIDENCE.

[III.] THE COMMISSION'S DECISION AND ADJUDICA-TION ORDER VIOLATE KATZ'S RIGHT TO DUE PROCESS.

## III. Discussion

{¶ 9} In an administrative appeal under R.C. 119.12, a common pleas court reviews the entire record and determines whether an agency's order is supported by reliable, probative, and substantial evidence, and is in accordance with law. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619 (1993). The standard of review for a court of appeals in an administrative appeal is more limited; we must determine whether the common pleas court abused its discretion. *Id.* An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, on questions of whether the agency's decision was in accordance with law, we exercise plenary review. *Gralewski v. Ohio Bur. of Workers' Comp.*, 167 Ohio App.3d 468, 2006-Ohio-1529 (10th Dist.).

## A. Validity of Investigation

{¶ 10} Katz argues in his first assignment of error the Commission's adjudication order was invalid because the investigation was barred by statute. Katz claims the investigation was conducted outside the time period permitted under R.C. 4735.32 and, therefore, any disciplinary proceeding based on the investigation was invalid.

{¶ 11} R.C. 4735.32(A)(1) provides the Commission or the superintendent of real estate "may commence, at any time within three years from the date on which an alleged violation of a provision of this or another chapter of the Revised Code occurred, any investigation that relates to the conduct of a licensed real estate broker, real estate salesperson * * * for purposes of determining whether a licensee * * * has violated a provision of this or another chapter of the Revised Code and whether, as a consequence, a licensee's license should be suspended or revoked, or other disciplinary action taken, as provided in this or another chapter of the Revised Code." The statute further provides that "[i]f such an investigation is not commenced within the three-year period, it shall be barred, and neither the commission nor the superintendent shall suspend or revoke the license of

an any licensee, or take other disciplinary action against any licensee * * * because of the alleged violation of a provision of this or another chapter of the Revised Code that could have been the subject of the barred investigation." This court has held that R.C. 4735.32 is a statute of limitations that "unequivocally expresses the legislature's intent that an investigation 'shall be barred' if the commission does not commence the investigation within three years from the date of the real estate licensee's allegedly wrongful conduct." *Boggs v. Ohio Real Estate Comm.*, 186 Ohio App.3d 96, 2009-Ohio-6325, ¶ 26 (10th Dist.).

{¶ 12} The property management agreement for the Jonquil Street property was signed on February 19, 2008. Ramos-Laboy filed her complaint with the Division on March 25, 2015, more than seven years after the date of the property management agreement. The notice of complaint issued to Katz on April 9, 2015 referred to February 19, 2008 as the relevant transaction date. Katz argues that under the plain language of R.C. 4735.32, the Division was prohibited from undertaking an investigation because the transaction at issue occurred more than three years before the complaint was filed.

{¶ 13} The property management agreement for the Jonquil Street property provided that the initial period of service would last from February 19 through August 31, 2008. The agreement further provided it would automatically renew thereafter on a year-to-year basis. Katz testified that his property management services continued under the property management agreement after the initial period of service expired. Ramos-Laboy testified she terminated the property management agreement in December 2014. Thus, to the extent the property management agreement or any of Katz's conduct under that agreement may have constituted a violation of law, such violation potentially existed until December 2014, just three months before the complaint was filed.

{¶ 14} The charges attached to the notification of formal hearing alleged that Katz engaged in conduct constituting misconduct in violation of R.C. 4735.18(A)(6) during the period April 2012 through June 2014. These charges were limited to conduct occurring within the three-year period before the complaint was filed on March 25, 2015. This was consistent with the mandate of R.C. 4735.32(A)(1) that an investigation "may commence, at any time within three years from the date on which an alleged violation * * * *occurred*." (Emphasis added.) Because the property management agreement for the Jonquil Street property was ongoing, it created the possibility of continuing violations. Thus, we find the

Division's investigation and bringing of charges against Katz for acts occurring from April 2012 through June 2014 does not violate R.C. 4735.32 and does not render the Commission's adjudication order invalid.

{¶ 15} Accordingly, we overrule Katz's first assignment of error.

**B. Evidence Supporting Final Adjudication Order**

{¶ 16} Katz argues in his second assignment of error the common pleas court abused its discretion by finding the Commission's final adjudication order was supported by reliable, probative, and substantial evidence and was in accordance with law. We will consider Katz's arguments with respect to each of the charges against him in turn.

**1. Acting like a broker without a broker's license**

{¶ 17} The first charge against Katz alleged that between April 2012 and June 2014 Katz acted like a real estate broker without a broker's license by failing to perform property management services for the Jonquil Street property through the brokerage with which he was licensed. This conduct was alleged to violate R.C. 4735.02 as incorporated in R.C. 4735.18(A)(6).

{¶ 18} R.C. 4735.18(A)(6) provides the Commission may impose disciplinary sanctions on any licensee who is found guilty of "[d]ishonest or illegal dealing, gross negligence, incompetency, or misconduct." The Commission is empowered to determine what acts constitute misconduct for purposes of the statute. *Richard T. Kiko Agency, Inc. v. Ohio Dept. of Commerce*, 48 Ohio St.3d 74, 76 (1990); *Hughes v. Ohio Div. of Real Estate*, 86 Ohio App.3d 757, 760 (2d Dist.1993). R.C. 4735.02(A) provides, in relevant part, that "no person * * * shall act as a real estate broker * * * or advertise or assume to act as such, without first being licensed as provided in [R.C. Chapter 4735]."

{¶ 19} The hearing officer concluded Katz did not act like a broker without a broker's license, as alleged in the first charge. Rather, the hearing officer concluded that as a licensed real estate salesperson, Katz was associated with a licensed real estate broker to do any of the transactions contained within the definition of a real estate broker. The hearing officer further concluded that because the definition of activities of a real estate broker included operation and management of rental properties, Katz was authorized by R.C. 4735.01(C) to engage in operation and management of rental properties. Thus, the hearing officer held Katz was acting as a licensed real estate salesperson, rather than as an

unlicensed real estate broker, when he performed property management services for the Jonquil Street property.

{¶ 20} The Commission rejected the hearing officer's conclusion with respect to the first charge. Pursuant to R.C. 119.09, the Commission was required to include in the record the reasons for its disapproval and modification of this portion of the hearing officer's report. In the final adjudication order, the Commission indicated it found Katz acted as a broker without a license in violation of R.C. 4735.02 because he operated without the supervision, guidance, or oversight of a broker and, therefore, acted like a broker; because he advertised in the name of his own company rather than the brokerage; because he provided property management services in the name of his own company rather than the brokerage; and because his trust account was held in the name of his own company rather than the brokerage. The common pleas court concluded there was reliable, probative, and substantial evidence to support the Commission's conclusion that Katz violated R.C. 4735.02 by acting as a broker without a license.

{¶ 21} Katz argues on appeal that, as a licensed real estate salesperson, he was permitted to engage in property management services and advertise those services because a licensed real estate broker is permitted to engage in such services and a licensed real estate salesperson is authorized to engage in the acts or transactions contained within the definition of a licensed real estate broker. Katz further argues that at the time of the final adjudication order in this case, the law was not clear with regard to the duties of brokers in supervising affiliated salespersons, citing subsequent amendments to the law clarifying those duties.

{¶ 22} As noted above, our standard of review is more limited than that of the common pleas court—we must determine whether the common pleas court abused its discretion in affirming the Commission's order. The Revised Code defines real estate salesperson in relation to a real estate broker and provides that a salesperson is "associated with a licensed real estate broker to do or to deal in any acts or transactions set out or comprehended by the definition of a real estate broker." R.C. 4735.01(C). The definition of real estate broker includes anyone who "[o]perates, manages, or rents, or offers or attempts to operate, manage, or rent, other than as custodian, caretaker, or janitor, any building or portions of buildings to the public as tenants." R.C. 4735.01(A)(5). Although

the law governing real estate brokers and salespersons has been amended with respect to a broker's duties of supervision and the prohibition on acting as a broker without authority, those amendments did not alter the provisions under which Katz was charged. *See* R.C. 4735.18(A)(38) and 4735.081.

{¶ 23} Based on the evidence in this case, we cannot conclude the common pleas court abused its discretion by concluding there was reliable, probative, and substantial evidence to support the Commission's finding on the first charge. During the relevant time period, Katz was initially affiliated with Barnett Realty. He testified he ended his affiliation with Barnett Realty in late 2012 or early 2013 and became affiliated with Tiger Realty and broker Mark Ebner. Katz testified his property management activities were conducted under the name Best Rentals or the name of the broker with whom he was affiliated, but admitted he used the name Best Rentals when affiliated with both Barnett Realty and Tiger Realty. Katz further admitted he had registered the name Best Rentals with the office of the Ohio Secretary of State as a trade name. The property management agreement for the Jonquil Street property had the names Best Rentals and Barnett Realty on it. Similarly, a copy of Katz's business card introduced at the hearing contained the names of both Tiger Realty and Best Rentals. Hile testified the Best Rentals name was not affiliated with Tiger Realty in the records of the Division of Real Estate.

{¶ 24} Katz testified he had an office in Bexley, but Ebner did not have an office at the same location. Although Katz testified he saw Ebner frequently and Ebner could freely access Katz's office, he admitted Ebner did not have a key to the office. As discussed more fully below, rental payments for the Jonquil Street property were made to Best Rentals, not Tiger Realty; these payments were deposited into an account held by Best Rentals Holding, rather than by Tiger Realty. The Commission's discussion of the evidence reflects a conclusion that although Katz was affiliated with Ebner and Tiger Realty, he effectively operated his property management services independently of that affiliation, which constituted acting as a broker without a license. This conclusion is reflected in the reasons set forth in the adjudication order for rejecting the hearing officer's conclusions regarding the first charge.

{¶ 25} Under these circumstances, we cannot conclude the common pleas court abused its discretion by concluding the Commission's final adjudication order was supported by reliable, probative, and substantial evidence with respect to the first charge.

**2. Failure to collect property management funds in the broker's name**

{¶ 26} The second charge against Katz alleged that between April 2012 and June 2014, in the course of managing the Jonquil Street property, Katz failed to collect deposits, payments, or management fees in the name of or with the consent of the broker with whom he was affiliated. This conduct was alleged to violate R.C. 4735.21 as incorporated in R.C. 4735.18(A)(6).

{¶ 27} As explained above, R.C. 4735.18(A)(6) provides the Commission may impose disciplinary sanctions on any licensee who is found guilty of "[d]ishonest or illegal dealing, gross negligence, incompetency, or misconduct." R.C. 4735.21 provides, in relevant part, that "[n]o real estate salesperson * * * shall collect any money in connection with any real estate * * * transaction, whether as a commission, deposit, payment, rental, or otherwise, except in the name of and with the consent of the licensed real estate broker * * * under whom the salesperson is licensed at the time the sales person earned the commission."

{¶ 28} The hearing officer found that rent for the Jonquil Street property was paid directly to Best Rentals and deposited to a trust account held at Fifth Third Bank in the name of Best Rentals Holding. The hearing officer further found that none of the rental payments went to Katz's broker, Tiger Realty, and the rental proceeds were not placed into a trust account in the name of Tiger Realty. The hearing officer concluded Katz's failure to collect rental payments or management fees in the name of his licensed broker was conduct contrary to law, which constituted misconduct for purposes of R.C. 4735.18(A)(6). The Commission adopted the hearing officer's findings of fact and conclusions of law with respect to the second charge, holding that Katz violated R.C. 4735.21 as set forth in the second charge. The common pleas court concluded there was reliable, probative, and substantial evidence to support the Commission's conclusion that Katz violated R.C. 4735.21.

{¶ 29} Katz argues the common pleas court abused its discretion by finding the Commission's conclusion with respect to the second charge was supported by reliable,

probative, and substantial evidence and was consistent with law. He claims R.C. 4735.21 must be read in conjunction with R.C. 4735.18(A)(27) and that the law only required him to have a separate property management trust account. Katz asserts he had a separate property management trust account and that rent and fees from the Jonquil Street property were placed into that account. Katz further argues he acted with the knowledge and consent of his broker and there was no evidence of improper handling or conversion of client funds.

{¶ 30} Katz testified before the hearing officer that rent from the Jonquil Street property was deposited into a trust account at Fifth Third Bank in the name of Best Rental Holdings and not into an account held by Tiger Realty. Similarly, Hile testified his investigation determined that rental payments for the Jonquil Street property were paid to Best Rental and were deposited into an account associated with Best Rental Holdings, not Tiger Realty. Thus, the common pleas court did not abuse its discretion by concluding there was reliable, probative, and substantial evidence to establish that Katz collected rent in a name other than that of his licensed broker, in violation of R.C. 4735.21. Moreover, R.C. 4735.18(A)(27), which Katz cites in support of his arguments, expressly refers to the requirement to maintain a separate trust account for funds "received by the broker in a fiduciary capacity in the course of managing real property" and that the account must be separate and distinct from any other account "maintained by the broker." Thus, this statute supports a conclusion that Katz violated R.C. 4735.21 by collecting rental payments in a name other than that of his broker and thereby committed misconduct subject to disciplinary sanctions under R.C. 4735.18(A)(6).

{¶ 31} Having concluded the common pleas court did not abuse its discretion by concluding there was reliable, probative, and substantial evidence to support the Commission's adjudication order, we overrule Katz's second assignment of error.

## C. Due Process

{¶ 32} In his third assignment of error, Katz asserts the Commission violated his right to due process. Katz argues he was punished based on his broker's failure to exercise supervision and oversight, but that he was not given notice of these charges. Katz claims the Commission failed to provide sufficient grounds for its rejection of the hearing officer's finding of no violation; he further claims the explanation offered by the Commission demonstrates he was sanctioned for alleged misconduct by his broker, which was not

charged in the notices he received. Katz also asserts the Commission violated his right to due process by refusing to consider his argument that it imposed a lesser penalty in another case involving similar charges. The common pleas court concluded Katz was placed on notice there were charges against him and had an opportunity to be heard at the September 2, 2016 hearing.

{¶ 33} The due process rights guaranteed under the federal and state constitutions apply in administrative proceedings. *MacConnell v. Ohio Dept. of Commerce*, 10th Dist. No. 04AP-433, 2005-Ohio-1960, ¶ 24. The fundamental requirement of procedural due process is notice and hearing. *Id.*, citing *Korn v. Ohio State Medical Bd.*, 61 Ohio App.3d 677, 684 (10th Dist.1988). The notice must be reasonably calculated, under the circumstances, to apprise a party of the pendency of the action and afford an opportunity to present objections. *Wightman v. Ohio Real Estate Comm.*, 10th Dist. No. 16AP-466, 2017-Ohio-756, ¶ 20. Due process further requires that an individual in an administrative proceeding receive a fair hearing before an impartial tribunal. *Id.* at ¶ 21.

{¶ 34} The notification of formal hearing issued to Katz on June 17, 2016 contained the charges against him, alleging that between April 2012 and June 2014 Katz violated R.C. 4735.18(A)(6) by: (1) acting like a broker without a broker's license by failing to perform property management services through the brokerage he was registered with, and (2) failing to collect deposits, payments or fees in the name of or with the consent of the licensed broker with whom he was affiliated. Thus, Katz was given notice of the charges against him. The notification of formal hearing also advised Katz that a formal hearing would be conducted on those charges and that he had an opportunity to appear and present evidence related to those charges, and to be represented by counsel at the hearing.

{¶ 35} The Commission's adjudication order found Katz violated R.C. 4735.18 as charged in the schedule attached to the notification of formal hearing. In accordance with R.C. 119.09, the Commission included an exhibit to the adjudication order explaining its reasons for rejecting certain conclusions of the hearing officer's report. *See* R.C. 119.09 ("[I]f the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval."). The reasons set forth by the Commission involved failure to conduct property management services through the brokerage with which Katz was affiliated or to

otherwise conduct activities under the auspices and oversight of the broker with whom he was affiliated.  Further, Katz appeared at the September 2, 2016 hearing before the hearing officer and at the January 18, 2017 proceedings of the Commission and was represented by counsel on both occasions.  Based on the record in this case, Katz was afforded due process at the administrative level because he was given notice of the charges against him and an opportunity to be heard before an impartial tribunal.

{¶ 36}  Accordingly, we overrule Katz's third assignment of error.

## IV.    Conclusion

{¶ 37}  For the foregoing reasons, we overrule Katz's three assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.