[Cite as *Collateral Mgt., L.L.C. v. Ohio Dept. of Commerce*, 2021-Ohio-1641.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Collateral Management LLC, | : | |
| Appellant-Appellant, | : | |
| | | No. 20AP-123 |
| v. | : | (C.P.C. No. 19CV-7044) |
| Ohio Department of Commerce, Division of Real Estate & Professional Licensing, | : | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on May 11, 2021

**On brief:** *Taft Stettinius & Hollister LLP, Kathryn S. Wallrabenstein,* and *Julia McNeil Danish*, for appellant. **Argued:** *Margaret Paige Ammons.*

**On brief:** *Dave Yost*, Attorney General, and *Brian R. Honen*, for appellee. **Argued:** *Brian R. Honen.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Appellant, Collateral Management LLC ("Collateral Management"), appeals the decision of the Franklin County Court of Common Pleas filed January 22, 2020, affirming the August 21, 2019 adjudication order issued by the Ohio Real Estate Appraiser Board ("the Board"). The common pleas court found the adjudication order was supported by reliable, probative, and substantive evidence and that the order was in accord with the law. For the following reasons, we affirm in part, reverse in part, and remand.

## I. Facts and Procedural History

{¶ 2} Collateral Management is an appraisal management company ("AMC"). Collateral Management is licensed in over 40 states. Jessica Massad is the owner and controlling person of Collateral Management. Massad testified she holds appraisal licenses in several other states. Massad held a residential real estate appraiser license in Ohio from 2002 until she surrendered her license on February 7, 2011 by signing an affidavit. The affidavit states:

> Now comes affiant Jessica Massad-Turner * * * who for her affidavit averts and states the following, to-wit:
>
> 1. I am currently a licensed residential real estate appraiser in the state of Ohio per §4763, et. seq. of the Ohio Revised Code;
>
> 2. I am hereby voluntarily surrendering my Ohio residential real estate appraiser license;
>
> 3. Upon surrender of my Ohio residential real estate appraiser license I shall immediately cease and desist all activity for which a residential real estate appraiser license is required in the state of Ohio;
>
> 4. In voluntarily surrendering my Ohio residential real estate appraiser license, I shall not apply for an Ohio appraiser certificate, license or registration in the future.
>
> 5. I have had the opportunity to seek legal counsel and obtain representation and advice before executing this affidavit. I voluntarily, knowingly and intelligently execute this affidavit with full knowledge of its significance.
>
> Further affiant sayeth naught.

The record reflects the affidavit was received by the Ohio Department of Commerce Division of Real Estate and Professional Licensing ("the division") on February 9, 2011.

{¶ 3} On December 19, 2018, Collateral Management filed an application for an Ohio AMC license with the division. On April 23, 2019, the superintendent of the division sent a letter to Massad denying Collateral Management's application. On April 30, 2019, Collateral Management, by and through counsel, requested a hearing to have the denial of Collateral Management's Ohio AMC application reviewed before the Board. A hearing was held before the Board on August 15, 2019, which was comprised of a chairman and four

board members. Appearing before the Board were counsel for the division, counsel for Collateral Management, and Massad, as owner and controlling person of Collateral Management. Counsel for the Board provided a brief history of AMC regulation under 12 U.S.C. 3353 regarding the establishment of minimum requirements and limitations to be applied by a state in the registration of an AMC in order to provide background on Ohio's AMC statute which was enacted just eight months prior to the hearing. Massad was the only witness, testifying on direct and cross-examination and answering questions from the Board.

{¶ 4} At the conclusion of testimony, and after deliberation off the record, the chairman of the Board moved for a decision to "approve and adopt the decision of the Superintendent to deny Collateral Management's license application to be an Ohio appraisal management company for the same reasons as set forth in the Superintendent's denial notice dated April 23, 2019." (Tr. at 56.) After some discussion on the record by members of the Board, the remaining four members voted to second the chairman's motion and ruled that the superintendent's decision was approved and adopted. An adjudication order adopting the decision of the Board was sent to Collateral Management, in care of Massad, on August 21, 2019.

{¶ 5} On August 28, 2019, Collateral Management filed an administrative appeal in the common pleas court in accord with R.C. 119.12. The common pleas court affirmed the adjudication order issued by the Board on January 22, 2020 finding it was supported by reliable, probative, and substantial evidence and in accord with the law.

{¶ 6} Collateral Management timely appeals.

## II. Assignments of Error

{¶ 7} Appellant assigns the following three assignments of error for our review:

[I.] The Common Pleas Court erred in deferring to the Real Estate Appraiser Board's ("Board's") unreasonable interpretation of the law regarding "substantive reason" and erred in affirming the Board's decision as it was not in accordance with the law.

[II.] The Common Pleas Court erred in deferring to the Board's unreasonable interpretation of the law regarding whether the surrender was "in lieu of revocation" and erred in affirming the Board's decision as it was not in accordance with the law.

[III.] The Common Pleas Court erred in affirming the Board's decision, which violated Appellant's due process rights.

## III. Analysis

### A. Standard of Review

{¶ 8}   Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order, and the order is in accordance with law.  *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980); *see also Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955).  Instead of appraising the weight of the evidence, an appellate court determines whether the common pleas court abused its discretion in its examination of the record for reliable, probative, and substantial evidence.  *Natoli v. Ohio State Dental Bd.*, 177 Ohio App.3d 645, 2008-Ohio-4068, ¶ 13 (10th Dist.).  An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  On questions of whether the agency's decision was in accordance with law, we exercise plenary review. *Gralewski v. Ohio Bur. of Workers' Comp.*, 167 Ohio App.3d 468, 2006-Ohio-1529, ¶ 17 (10th Dist.).

### B. First Assignment of Error

{¶ 9}   Collateral Management argues in its first assignment of error that the Board eliminated the "substantive reason" element of R.C. 4768.06(B)(4) and the common pleas court erred in affirming the Board's misinterpretation and application of the same.  Collateral Management further argues that, in effect, the common pleas court eliminated the requirement that a voluntary surrender be undertaken for a substantive reason to trigger the prohibition on the granting of an AMC license.  *See* R.C. 4768.06(B)(4).  In support of its premise that the Board misinterpreted the law, Collateral Management maintains the Board must contemplate the reason behind the surrender, which would include consideration of: (1) the guidance set forth in 80 Fed.Reg. 32671, (2) the merits of the pending complaints filed by the division against Massad, and (3) the reason(s) for voluntary surrender as given by Massad herself.

{¶ 10}  R.C. 4768.06(B)(4) states:

> Each owner and controlling person of an appraisal management company shall * * * [h]ave not had a license, certificate, or registration to act as an appraiser that has been refused, denied, canceled, *surrendered,* or revoked in this state or in any other state *for a substantive reason.* A designated controlling person may have had a license or certificate to act as an appraiser refused, denied, canceled, revoked, or surrendered in lieu of revocation in a state for a nonsubstantive reason if the license or certificate was subsequently granted or reinstated[.]

(Emphasis added).

{¶ 11} In relevant part, the plain language states that the controlling person, in this case Massad, shall have not had a license to act as an appraiser surrendered for a substantive reason.

{¶ 12} In support of the argument that the Board and the common pleas court eliminated the "substantive reason" element, Collateral Management first points to 80 Fed.Reg. 32671 and states that the Board was required to consider the same in determining what constitutes a "substantive reason" for surrender of Massad's license. Collateral Management asserts that 80 Fed.Reg. 32671 "unambiguously define[s]" "substantive reason" as requiring a showing of fraud or a known failure to perform an appraisal in compliance with the Uniform Standards of Professional Appraisal Practice ("USPAP") that rose to the level of warranting a revocation as the definition of "substantive." 80 Fed.Reg. 32658, 32671. (Appellant's Reply Brief at 6-7.) In its brief, the Board also puts forth that the federal register citation "specifically defines" the term "substantive," as revocation for failure to comply with the USPAP. 80 Fed.Reg. 32671. (Appellee's Brief at 16-17.) The Board argues the "unrebutted" allegations pending against Massad at the time of her surrender would fall under the definition of substantive. (Appellee's Brief at 16.) Conversely, Collateral Management believes the Board was required to look at the merits of the complaints that reached the opportunity for hearing stage in order to determine whether the basis would have risen to the level of a violation of the USPAP as given in the discussion in the federal guidance. 80 Fed.Reg. 32671.

{¶ 13} Although Collateral Management did argue before the common pleas court that the Board erred in its interpretation and application of R.C. 4768.06(B)(4) by not considering whether the surrender was for a substantive reason, Collateral Management

did not specifically argue 80 Fed.Reg. 32671 in support thereof. The Board, however, did point to the Federal Register before the common pleas court in support of its position that "substantive" had acquired a particular meaning. The common pleas court did not address either party's argument specific to 80 Fed.Reg. 32671.

{¶ 14} 80 Fed.Reg. 32671, Chapter III, Final Rule and Public Comments on the Proposed Rule, Section 34.214(a),[1] states:

> Some commenters suggested that the Agencies consider circumstances in which an appraiser's license lapsed or was revoked for technical reasons unrelated to the quality of appraisals performed by the appraiser. They asserted that being barred from owning an AMC eligible for registration in a State or included in the AMC National Registry in these cases is potentially unfair. One example of this is when an appraiser neglects to renew his or her appraiser's license on time. Depending on the State law, an appraiser would typically be able to be reinstated, pending payment of certain penalties. In this situation, the lapse in the appraiser's license is unrelated to fraud or a failure to perform an appraisal in compliance with USPAP.
>
> The Agencies agree that non-substantive grounds for the revocation of an appraiser's license should not be construed to be within the scope of the registration limitations in section 1124(d). n106 In connection with this, the Agencies agree that an appraiser who is subsequently reinstated by the State appraiser certifying and licensing agency should not be within the scope of the registration limitations. For example, if an appraiser's license lapses for non-payment of fees, and the appraiser is later reinstated by the State appraiser certifying and licensing agency after meeting his or her obligation, the appraiser should not be barred from owning an AMC. If, however, an appraiser's license or certificate is revoked, for example, for violations of the TILA independence standards or for failure to comply with USPAP, an AMC owned wholly or in part by that appraiser should not be eligible to register in a State or appear on the AMC National Registry. For these reasons, the final rule clarifies that an appraiser is subject to the ownership ban if the revocation of the appraiser's license or

---

[1] According to Chapter III, supplementary information was provided within 80 Fed.Reg. 32671 that refers to a section number of the proposed and final rule text for the Office of the Comptroller of the Currency and 12 C.F.R. 34.210 et seq. The reference to Section 34.214(a) would be found under Chapter 12 of the C.F.R.

certification was for a substantive cause, as determined by the State certifying and licensing agency.

**{¶ 15}** We agree with Collateral Management that 80 Fed.Reg. 32671 supports its argument that the Board was required to consider the reasons or circumstances for surrender of Massad's license to determine if the surrender was for a "substantive reason." However, we do not agree that 80 Fed.Reg. 32671 unambiguously or specifically defines a "substantive reason" as Collateral Management and the Board suggest. The referenced Federal Register citation, 80 Fed.Reg. 32671, Chapter III, Section 34.214(a), is a discussion of public comments on a proposed rule. It is not a definition that was incorporated into the final rule nor was it incorporated into Ohio's statute. *See* R.C. 4768.06(B)(4).

**{¶ 16}** The discussion does provide examples of what might be considered "substantive" versus "technical." Examples of "substantive" reasons include fraud, failure to perform an appraisal in compliance with USPAP, and violation of the Truth in Lending Act independence standards. An example of a "technical" reason included neglecting to renew the license. According to Massad's testimony before the Board, her purported reasons for surrender were that she was sick, recently divorced, she did not intend to return to Ohio to use her license, nor did she intend to renew her license. Collateral Management argues that Massad surrendered her license "for her own convenience." The Board asserts Massad voluntarily surrendered her license rather than defending against charges alleging multiple violations of the USPAP by Massad. None of the purported reasons for Massad's surrender fall under the examples of "substantive" or "technical" as provided in 80 Fed.Reg. 32671, Chapter III, Section 34.214(a).

**{¶ 17}** The final rule found in 12 C.F.R. 34.214(a)(1) requires:

An AMC subject to State registration pursuant to § 34.213 shall not be registered by a State or included on the AMC National Registry if such AMC, in whole or in part, directly or indirectly, is owned by any person who has had an appraiser license or certificate refused, denied, cancelled, surrendered in lieu of revocation, or revoked in any State for a substantive cause, as determined by the appropriate State appraiser certifying and licensing agency.

However, the final rule does not define "substantive," suggesting that implementing agencies have some discretion in determining what constitutes "substantive." *See* 12 C.F.R.

34.211 and 34.214. Furthermore, as we will discuss below, 12 C.F.R. 34.214(a)(1) differs from R.C. 4768.06(B)(4) in that the federal rule modifies "surrender" with the phrase "in lieu of revocation" as well as the phrase "substantive cause." Whereas the Ohio statute modifies "surrender" with the phrase "substantive reason" only.

{¶ 18} As noted above, in enacting its own AMC registration law, Ohio requires:

> Each owner and controlling person of an appraisal management company shall * * * [h]ave not had a license, certificate, or registration to act as an appraiser that has been refused, denied, canceled, surrendered, or revoked in this state or in any other state *for a substantive reason*. A designated controlling person may have had a license or certificate to act as an appraiser refused, denied, canceled, revoked, or surrendered in lieu of revocation in a state *for a nonsubstantive reason* if the license or certificate was subsequently granted or reinstated[.]

(Emphasis added.) R.C. 4768.06(B)(4). "Substantive" was not defined in R.C. 4768.01 and 4768.06, suggesting that just as with 12 C.F.R. 34.214(a)(1), the board is afforded some discretion in determining what constitutes surrender for a "substantive reason" and is not limited to the examples set forth in 80 Fed.Reg. 32671 as suggested by Collateral Management and the Board.

{¶ 19} In support of the argument that the Board and common pleas court eliminated the "substantive reason" element, Collateral Management also asserts the Board was required to examine the merits of the pending complaints filed by the division against Massad and the reasons for voluntary surrender as given by Massad herself. In assessing the merits of this posture, the findings made by the superintendent and the Board in this matter are relevant.

{¶ 20} Collateral Management's application for an AMC license in Ohio was denied by the superintendent by letter dated April 23, 2019. The superintendent detailed the following as the basis for denial of the application:

> In 2010, you maintained an Ohio residential real estate appraiser license (License# 2001010113). The Division issued charges against your Ohio appraiser license in case numbers 2010-259 & 2010-262 (see enclosure for copy of the charge notice). On or about February 9, 2011, the Division received an affidavit signed by you in which you voluntarily surrendered your Ohio appraiser license to the Division arising out of a third

case (case number 2010-759). As a result of your surrendered Ohio [a]ppraiser license, the Division closed all three case numbers (2010-259[] 2010-262 & 2010-759) without further action (see enclosure for copies of the notices). Consequently, you had an Ohio real estate appraiser license that was surrendered for substantive reasons. Based on these reasons, your application has been denied based on your failure to comply with or satisfy Ohio Revised Code Section 4768.06(B)(4).

{¶ 21} Collateral Management requested a hearing before the Board for review of Collateral Management's AMC application. On August 15, 2019, Massad appeared before five members of the Board, providing testimony on behalf of Collateral Management in support of its application to become an AMC in Ohio. At the conclusion of the presentation of evidence and Massad's testimony upon direct and cross-examination, the Board upheld the superintendent's finding that Massad surrendered her license for a "substantive reason" and the basis for this appeal. Prior to reaching their determination, the Board went off the record for discussion at the conclusion of the hearing. Upon reconvening, three board members stated their reasoning for moving to adopt the decision of the superintendent denying Collateral Management's AMC application.

{¶ 22} Three of the five voting board members spoke on the record and provided the basis on which they voted. The first, Chairman Lynch, voted to approve and adopt the decision of the superintendent citing his approval on the same basis as stated in the superintendent's decision. Chairman Lynch furthered: "I'm basing my opinion on the affidavit signed by Ms. Massad back in 2011 indicated she would no longer be a licensee in the state of Ohio. She had proper opportunity to have legal counsel at that particular time and chose not to, and she's voluntarily surrendered her license." (Tr. at 57.) The second board member, unnamed, concurred with the Chairman and stated: "The problem is is what was done and when we can't go back and look at things prior. So with the signing of the affidavit, I think that that was -- for whatever reason she did it, she did sign that and that sets the course for what we're looking at at this point." (Tr. at 57.) The third, Ms. Hahn, explained her review was based on state and federal regulations and the statutes. Ms. Hahn stated:

> Ms. Massad's counsel and Collateral Management's counsel was very eloquent in his closing statement and other testimony

presented trying to urge us to look at the merits of the complaints that were raised against Ms. Massad back in 2011 or 2010.

But I -- based on my review of state and federal regulations and statutes, it appears that that is the wrong direction as to what the Board should review and take into consideration. Instead of the merits or trying to relitigate or litigate the underlying complaints, we are bound to look to whether the surrender of the license was substantive.

With those boundaries the -- the underlying complaints are not being looked at to -- at least by me as to whether they are meritorious or would have resulted in a revocation or other actions by the Board at that time but whether the actions of the surrender appeared to be based on any underlying issues and, therefore, substantive as opposed to merely choosing no longer to practice in Ohio.

And based on what was presented, the -- the fact that there were three complaints pending at the time it reached the point of a Notice of Opportunity for Hearing does appear to be new grounds for assessing a surrender and, therefore, in my mind the denial would be -- by the Superintendent was also. I concur with the rest of the Board Members that have spoken so far that it was appropriate.

(Tr. at 57-58.) The considerations of the two remaining Board members who voted to approve and adopt the application denial were not stated on the record.

{¶ 23} Collateral Management argues the Board was required to consider the reasons or circumstances of the surrender of Massad's license to determine if the surrender was for a "substantive reason." Collateral Management asserts the Board failed to consider Massad's testimony explaining why she chose to sign the affidavit and surrender her license, and the substance of the allegations pending against Massad.

{¶ 24} As noted above, on questions of whether the agency's decision was in accordance with law, we exercise plenary review. *Gralewski* at ¶ 17. This court held in *Pour House, Inc. v. Ohio Dept. of Health*, 185 Ohio App.3d 680, 2009-Ohio-5475, ¶ 14 (10th Dist.):

> The interpretation of a statute is a question of law that we review de novo. *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, ¶ 27. In

> interpreting a statute, a court's principal concern is determining the legislative intent. *State v. S.R.* (1992), 63 Ohio St. 3d 590, 594. A court must first examine the statute's language to determine the legislative intent. *Id.*; *Black v. Bd. of Mecca Twp. Trustees*, 11th Dist. No. 2004-T-0031, 2005-Ohio-561, ¶ 9. An unambiguous statute need not be interpreted; instead, a court simply must apply the words of the statute as written. *Guethlein v. Ohio State Liquor Control Comm.*, 10th Dist. No. 05AP-888, 2006-Ohio-1525, ¶ 11; *Marcum v. Rice* (July 20, 1999), 10th Dist. No. 98AP-717. Courts lack the authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation or liberal or narrow construction. *Guethlein* at ¶ 12; *Boardman Twp. Bd. of Trustees v. Fleming* (1996), 110 Ohio App.3d 539, 542. "Rather, a court must give effect to the words used in the statute, accord the words their usual and customary meaning, and not delete words used or insert words that are not used." *Guethlein*, citing *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50.

Doubts as to the interpretation of a statute should be resolved in favor of the agency if the interpretation is reasonable. *Clark v. State Teachers Retirement Sys.*, 10th Dist. No. 18AP-105, 2018-Ohio-4680, ¶ 38. " '[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' " *Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12, quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

{¶ 25} In hearing Massad's appeal of the Board's adjudication order, the common pleas court held:

> [I]t is not disputed that Ms. Massad learned of [the] pending disciplinary action and surrendered her license rather than defend against the allegations. The Board concluded that, in doing so, Ms. Massad surrendered her residential real estate appraiser license "for a substantive reason." *See* R.C. 4768.06(B)(4). "Substantive" is not defined by statute. The Court must defer to the Board's interpretation of R.C. 4768.06(B)(4) because it is reasonable. *See Rings v. Nichols*, 13 Ohio App.3d at 260.

(Decision at 6.) The common pleas court further held:

> Collateral also argues that the administrative hearing was fundamentally unfair because the Board allegedly failed to consider Ms. Massad's testimony in determining whether she had surrendered her license "for a substantive reason." Simply put, the record does not support Collateral's claim. The Board was entitled to assign weight to the conflicting testimony, and the Court finds no error in the weight so assigned.

(Decision at 8.)

{¶ 26} Of the five voting Board members, Hahn was the only member to articulate that it was necessary to consider whether the surrender was due to a "substantive reason," and in doing so, Hahn concluded the surrender appeared to be based on underlying issues, rather than merely choosing to no longer practice in Ohio. The remaining two Board members who articulated their reasons for upholding the superintendent's finding pointed to Massad's signing of the affidavit itself, in which Massad averred she was agreeing to never be licensed as an appraiser in Ohio after having the opportunity to consult with legal counsel and choosing not to, as the basis for their vote rather than considering whether the surrender was for a "substantive reason." We cannot discern the reasoning of the remaining two Board members as the record is silent regarding the same.

{¶ 27} We agree with Collateral Management to the extent it argues it is necessary for the Board to consider whether the surrender was for a "substantive reason." The common pleas court stated as much and, in this regard, did not err. However, the common pleas court erred in not applying the interpretation it correctly determined.

{¶ 28} The Board was required to consider the reason for the surrender and whether it was "substantive." *See* R.C. 4768.06(B)(4). This court gleans from statements made by two of the Board members, and that of the common pleas court, that at least two of the Board members based their vote to approve and adopt the decision of the superintendent solely upon the affidavit signed by Massad and, specifically, the assertions that she had agreed to no longer be licensed in Ohio, she had legal counsel, and she voluntarily surrendered her license. The unnamed Board member even reasoned that Massad signed the affidavit "for whatever reason." The mere signing of the affidavit, for whatever reason, without consideration of whether the surrender was taken for a substantive reason does not comply with the interpretation of R.C. 4768.06(B)(4), which the common pleas court and this court find to be correct.

{¶ 29} For the reasons stated herein, we agree with Collateral Management that the common pleas court did not apply the interpretation of R.C. 4768.06(B)(4) that it is necessary to consider whether the surrender was for a substantive reason, which the common pleas court and this court find to be correct. We do not agree, however, that the definition of a "substantive reason" is confined to 80 Fed.Reg. 32671 or that the Board is required to look at the merits of the complaints pending at the time of Massad's surrender. Furthermore, we do not agree that the Board is required to relitigate the underlying basis for Massad's 2011 surrender. Rather, the Board is required to determine whether the surrender was for a substantive reason, not for "whatever reason," and we afford the Board discretion in determining whether the surrender was for a "substantive reason." We also defer to the Board in assigning appropriate weight to the affidavit, testimony of Massad, and any evidence presented by the division.

{¶ 30} Therefore, we sustain in part and overrule in part Collateral Management's first assignment of error and remand to the common pleas court with instructions to return this case to the Board for *all* members to review the record and consider whether Massad surrendered her license for a substantive reason.

### C. Second Assignment of Error

{¶ 31} Collateral Management argues in its second assignment of error that the Board failed to examine whether Massad's surrender was "in lieu of revocation" and such examination was required by R.C. 4768.06(B). Collateral Management reasons that R.C. 4768.06(B)(4) and 12 C.F.R. 225.194(a)(1), or 34.214(a)(1) as cited by the Board, require an examination of whether the surrender was for a "substantive reason" and "in lieu of revocation" to trigger an AMC registration restriction.[2] Collateral Management argues the

---

[2] 12 U.S.C. 3353 governs appraisal management companies. The rules adopted pursuant to 12 U.S.C. 3353 are set forth in Title 12 of the Code of Federal Regulations ("C.F.R."). Both Collateral Management and the Board cite to Title 12, but cite to different parts and chapters within the C.F.R. Collateral Management cites to 12 C.F.R. Part 225, whereas the Board cites to 12 C.F.R. Part 34. Collateral Management's citation appears under Chapter II of the Federal Reserve System, Subchapter A, Board of Governors of the Federal Reserve System, Part 225 Bank Holding Companies and Change in Bank Control. The Board's citation falls under Chapter I, Office of the Comptroller of the Currency, Department of the Treasury, Part 34 Real Estate Lending and Appraisals. Both C.F.R regulations cited herein address the same issue within their respective subpart, the minimum standards for appraisal management companies and the language of the regulations mirror one another substantively.

Board erred in not considering whether the surrender was in lieu of revocation and that the common pleas court erred in deferring to the Board on this.

{¶ 32} Interestingly, Collateral Management argued nearly the opposite before the common pleas court and, therefore, it is no wonder the common pleas court did not address surrender in lieu of revocation in its decision. Before the common pleas court, Collateral Management argued the Board's reliance on federal law was misplaced because federal law does not apply here. Collateral Management argued: "Federal law allows a state could establish requirements in addition to those found in 12 USCS 3353. *See* 12 CFR 34.210(d). Ohio did so. Surrenders in lieu of revocation are a ban for owners or controlling persons of appraisal management companies. Ohio, however, also bans owners and controlling persons of appraisal management companies who have surrendered their appraiser license for substantive reasons." (Nov. 5, 2019 Collateral Management's Common Pleas Court Brief at 5.) Therefore, Collateral Management argues "[f]ederal law is not akin to Ohio's law in this matter." (Nov. 5, 2019 Collateral Management's Common Pleas Court Brief at 5.)

{¶ 33} We agree with the argument Collateral Management made before the common pleas court but disagree with the argument Collateral Management now makes.

{¶ 34} As noted above, 12 C.F.R. 34.214(a)(1)[3] states:

> An AMC subject to State registration pursuant to § 34.213 shall not be registered by a State or included on the AMC National Registry if such AMC, in whole or in part, directly or indirectly, is owned by any person who has had an appraiser license or certificate refused, denied, cancelled, *surrendered in lieu of revocation, or revoked in any State for a substantive cause*, as determined by the appropriate State appraiser certifying and licensing agency.

(Emphasis added.)

---

To maintain continuity, this court will use Part 34 of Title 12 of C.F.R., which was cited by the court of common pleas. This court notes that Collateral Management cites 12 C.F.R. 34.214 in its reply brief in the common pleas court.

[3] 12 C.F.R. 225.194(a)(1) as cited by Collateral Management states: "An AMC subject to state registration pursuant to section 225.193 shall not be registered by a state or included on the AMC National Registry if such AMC, in whole or in part, directly or indirectly, is owned by any person who has had an appraiser license or certificate refused, denied, cancelled, surrendered in lieu of revocation, or revoked in any State for a substantive cause, as determined by the appropriate State appraiser certifying and licensing agency."

{¶ 35} As Collateral Management suggests, the federal statute prohibits state registration if the owner surrendered their license in lieu of revocation. However, 12 U.S.C. 3353(b) states: "Relation to State law. Nothing in this section shall be construed to prevent States from establishing requirements in addition to any rules promulgated under subsection (a)." 12 C.F.R. 34.210(d)[4] mirrors the aforementioned statute stating, "Rule of construction. Nothing in this subpart should be construed to prevent a State from establishing requirements in addition to those in this subpart." Consistent with 12 U.S.C. 3353(b) and 12 C.F.R. 34.210(d), Ohio enacted R.C. 4768.06(B)(4) establishing requirements in addition to those outlined in subpart 12 C.F.R. 34.214. Specifically, Ohio prohibits the granting of an AMC license unless certain criteria are met, including the owners have not had a license surrendered for a "substantive reason."

{¶ 36} The relevant section of R.C. 4768.06(B)(4), the first sentence, states: "Each owner and controlling person of an appraisal management company shall satisfy all of the following criteria: * * * Have not had a license, certificate, or registration to act as an appraiser that has been refused, denied, canceled, *surrendered*, or revoked in this state or in any other state *for a substantive reason*." (Emphasis added.)

{¶ 37} As we noted above, this language is plain and unambiguous. *See Guethlein v. Ohio State Liquor Control Comm.*, 10th Dist. No. 05AP-888, 2006-Ohio-1525, ¶ 12. In Ohio, even if a surrender was not in lieu of revocation, an applicant who surrendered his or her license could still not be eligible for an AMC license if the surrender was for a substantive reason.

{¶ 38} Furthermore, we are not persuaded by Collateral Management's argument that the first sentence of R.C. 4768.06(B)(4) must be read in conjunction with the second sentence in the context of this case. The second sentence of R.C. 4768.06(B)(4) states: "A designated controlling person may have had a license or certificate to act as an appraiser refused, denied, canceled, revoked or *surrendered in lieu of revocation* in a state for a nonsubstantive reason *if the license or certificate was subsequently granted or reinstated*." (Emphasis added.) This second sentence is not relevant in this case as Massad's real estate appraiser license was not subsequently granted or reinstated.

---

[4] As cited by Collateral Management, 12 C.F.R. 225.190(c) states "Rule of construction. Nothing in this subpart should be construed to prevent a State from establishing requirements in addition to those in this subpart."

{¶ 39} Therefore, the common pleas court did not err in deferring to the Board's interpretation and application of R.C. 4768.06(B)(4) by not considering whether the surrender was "in lieu of revocation."

{¶ 40} Accordingly, we overrule Collateral Management's second assignment of error.

### D. Third Assignment of Error

{¶ 41} Collateral Management argues in its third assignment of error that the common pleas court erred in affirming the Board's adjudication order because the Board's application of R.C. 4768.06(B)(4) was a violation of due process for reasons of retroactive application.

{¶ 42} It is not clear that Collateral Management preserved this argument at the common pleas level.  Even assuming, arguendo, Collateral Management did raise it at the common pleas level, Collateral Management points us to no place in the administrative record where the issue of either retroactivity or constitutionality was raised.  Therefore, this is an as-applied challenge.

{¶ 43} Constitutionality of statutes is a question for the courts and not for a board or commission.  *E. Ohio Gas Co. v. Pub. Util. Comm.*, 137 Ohio St. 225, 239 (1940).  The Supreme Court of Ohio has held that an appellant may raise a facial constitutional challenge in an administrative appeal even where the appellant did not raise that challenge before the commission or agency.  *See Reading v. Public Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181; *see also Derakhshan v. State Med. Bd. of Ohio*, 10th Dist. No. 07AP-261, 2007-Ohio-5802, ¶ 25 (permitting an appellant to raise a facial constitutional challenge to the statute upon which the medical board relied to revoke his medical license on appeal); *Leon v. Ohio Bd. of Psychology*, 63 Ohio St.3d 683, 686-87 (1992) (considering argument that the regulation upon which the board relied to revoke the appellant's psychology license was unconstitutionally vague).  A court may also consider an as-applied constitutional challenge in an administrative appeal.  *State ex rel. Kingsley v. State Emp. Relations Bd.*, 10th Dist. No. 09AP-1085, 2011-Ohio-428, ¶ 19.

{¶ 44} In contrast to a facial challenge, however, when a litigant challenges the constitutionality of a statute as applied to a specific set of facts, extrinsic facts are needed, and the litigant must raise the as-applied challenge in the first instance before the

administrative agency to allow the parties to develop an evidentiary record. *Kingsley* at ¶ 18, citing *Reading* at ¶ 15-16. Review of the testimony before the Board does not reflect that Collateral Management raised the constitutionality of R.C. 4768.06(B)(4) as applied.

{¶ 45} Nevertheless, even if Collateral Management did present extrinsic facts before the Board sufficient to preserve a claim of as-applied unconstitutionality, we note that we are persuaded by the Board's argument that Massad had no vested right to an AMC license. This court has held:

> A "vested right" is a right that " 'so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.' " *Harden v. Ohio Atty. Gen.*, 101 Ohio St.3d 137, 2004-Ohio-382, ¶ 9, quoting *Black's Law Dictionary* (7th ed. 1999). "A right is not regarded as vested in the constitutional sense unless it amounts to something more than a mere expectation or interest based upon an anticipated continuance of existing law." *In re Emery* (1978), 59 Ohio App.2d 7, 11. "[W]here no vested right has been created, 'a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality.' " [*State v. Cook* (1998), 83 Ohio St.3d 404, 412, quoting *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281.]

*Dukes v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 09AP-515, 2009-Ohio-6781, ¶ 20.

{¶ 46} In *Dukes*, we held a Medicaid provider agreement was not absolute and therefore did not confer a vested or substantive right in the constitutional sense for purposes of retroactivity. *Dukes* at ¶ 20. We reasoned the agreement had to be renewed annually by the Ohio Department of Job and Family Services ("ODJFS"), but ODJFS was prohibited from renewing the agreement if the appellant did not comply with the laws and rules applicable thereto. *Id.* at ¶ 21. The agreement could also be revoked. *Id.* Likewise, here, an AMC license must be renewed annually and can only be renewed if certain requirements are met. *See* R.C. 4768.06, 4768.07, 4768.08. In addition, an AMC license can also be revoked. R.C. 4768.13(I)(4). In *Dukes*, we found the appellant's Medicaid provider agreement was similar to a day-care certification. *Cosby v. Franklin Cty. Dept. of Job & Family Servs.*, 10th Dist. No. 07AP-41, 2007-Ohio-6641, ¶ 21. In *Cosby*, we held that the day-care certification at issue was a license as defined in R.C. 119.01(B). *Id.* at ¶ 26. We

further held that "[a] 'license' does not ordinarily confer an absolute or vested right." *Id.* An AMC is a license, and Collateral Management points us to no authority that such a license confers an absolute or vested right contrary to the general authority that a license does not confer a vested right.

{¶ 47} Accordingly, we overrule appellant's third assignment of error.

## IV. Conclusion

{¶ 48} For the aforementioned reasons, we sustain in part and overrule in part appellant's first assignment of error and overrule the second and third assignments of error. We remand this matter to the common pleas court with instructions to return the case to the Board to apply R.C. 4768.06(B)(4) consistent with the interpretation that it must consider whether Massad's license was surrendered for a substantive reason.

*Judgment affirmed in part, reversed in part; and cause remanded with instructions.*

BEATTY BLUNT, J., concurs.
LUPER SCHUSTER,  J., concurs in part and dissents in part.

LUPER SCHUSTER, J., concurring in part and dissenting in part.

{¶ 49} I agree with the majority's resolution of the second and third assignments of error.  However, because I would overrule the entirety of Collateral Management's first assignment of error, I respectfully dissent.

{¶ 50} The central issue is whether Massad's surrender of her real estate appraiser license in 2011 was "for a substantive reason" as that phrase is used in R.C. 4768.06(B)(4). The pertinent statutory scheme does not define "substantive."  As the Supreme Court of Ohio has noted, "[i]t is a fundamental tenet of administrative law that an agency's interpretation of a statute that it has the duty to enforce will not be overturned unless the interpretation is unreasonable." *State ex rel. Clark v. Great Lakes Constr. Co.*, 99 Ohio St.3d 320, 2003-Ohio-3802, ¶ 10.  Thus, "a trial court must defer to an administrative agency's interpretation of a statute it must administer so long as the interpretation is reasonable and consistent with the underlying legislative intent." *Warren v. Morrison*, 10th Dist. No. 16AP-372, 2017-Ohio-660, ¶ 10, citing *Oyortey v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-431, 2012-Ohio-6204, ¶ 17.

{¶ 51} Here, the Board noted that Massad surrendered her license in 2011 after learning of pending disciplinary actions against her rather than defend against those allegations. The Board considered Massad's surrender in that context to be for a substantive reason within the meaning of R.C. 4768.06(B)(4), and the common pleas court found the Board's interpretation to be reasonable. I agree with the common pleas court that the Board's interpretation of R.C. 4768.06(B)(4) was reasonable and would defer to it. Though Massad now asserts her motivations for surrendering her license in 2011 were unrelated to the pending disciplinary proceedings, Massad chose not to defend against those allegations in 2011 and instead signed a sworn affidavit that she was voluntarily surrendering her license, promising to never apply for an Ohio license in the future. The Board's interpretation of Massad's signing of the affidavit as a surrender for a substantive reason reasonably gives finality to Massad's actions in 2011. I would not, as the majority does, limit the Board's ability to rely on Massad's signing of the 2011 affidavit or require the Board to relitigate the underlying basis for Massad's 2011 surrender. Thus, I would overrule the entirety of Collateral Management's first assignment of error.

{¶ 52} For these reasons, I respectfully concur in part and dissent in part.